Decided 2 June, 1903.

## WALKER *v.* FIRST NATIONAL BANK.

[72 Pac. 635.]

NECESSARY ELEMENTS OF CONVERSION.

1. To constitute a conversion it must appear that the person charged has exercised some act of dominion or control over the property of another inconsistent with the latter's rights, or has aided or assisted some one else to do so.

ACCEPTING PROCEEDS OF ANOTHER'S PROPERTY NOT A CONVERSION.

2. The acceptance by a creditor of money in payment of a debt, not knowing that it did not belong to the debtor, is not a conversion by such creditor of the money, though it might be otherwise if he had received possession of property that the debtor did not own.

PASSING TITLE BY DELIVERING BILL OF LADING—PAROL EVIDENCE.

3. Although a bill of lading represents the property for which it was given, and title to such property, when so intended by the parties, may pass by indorsement or delivery of the bill, neither indorsement nor delivery has any such effect in passing title, except as the result of contract between the parties, and the real transaction may be shown by parol.

EXAMPLE OF CONDUCT NOT CONSTITUTING A CONVERSION.

4. A bank cannot be held liable for conversion by a flouring mill company in manufacturing flour from wheat belonging to plaintiff, and selling the same, by receiving in good faith, and without knowledge of plaintiff's rights, a draft drawn on the purchaser for collection, together with a bill of lading for the flour, and after making collection, disbursing the proceeds.

From Umatilla: W. R. ELLIS, Judge.

This is an action by J. M. Walker against the First National Bank of Athena and Hugh McLean for the alleged conversion by the defendants of 1,020 sacks of flour manu-

factured from wheat belonging to the plaintiff.  The facts are that some time prior to January, 1902, the Athena Flouring Mill Company owned and operated a flouring mill at Athena, and was engaged in the business of purchasing wheat and manufacturing it into flour for sale. It also received grain on storage, for which it issued warehouse receipts.  During the month of December, 1901, it wrongfully and without authority converted into flour wheat which plaintiff had in store with it, and loaded it, with other flour belonging to the company, aboard a car, for shipment and sale.  While the car containing such flour was standing on the mill track or spur, defendant McLean demanded of the company pay for wheat it had previously purchased, and threatened, in case payment was not made, to attach the car load of flour.  The manager of the company told him that it was needless for him to do so, and that he should be paid out of the proceeds of the flour as soon as received.  McLean, assenting to this arrangement, took no further steps for the collection of his debt; and the mill company thereafter shipped the flour in its own name to Newhall & Co., San Francisco, drew its draft on the consignee for the value thereof, and deposited the same, with the bill of lading attached, in the defendant bank for collection, with instructions to retain from the proceeds the sum of $87.50 for money the bank advanced for freight on the shipment, and from the remainder to pay the amount due McLean.  The draft and bill of lading were forwarded to San Francisco, where the draft was collected; and the bank, after deducting the money advanced by it, paid the debt due McLean from the mill company, and disbursed the balance upon checks drawn against it by the company.  Both the bank and McLean acted in good faith.  Neither had any notice or knowledge that the plaintiff had any interest in the flour, or that it was manufactured from his wheat, but both sup-

posed it was the property of the mill company, and did not learn of the plaintiff's claim thereto until long after the money had been collected and disbursed as above stated. The court below held that upon these facts the defendants were not liable for a conversion of the flour, and entered judgment accordingly, and the plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *R. J. Slater* and *Jas. A. Fee*, with an oral argument by *Mr. Slater*.

For respondents there was a brief over the names of *Carter & Raley* and *Balleray & McCourt*, with an oral argument by *Mr. Chas. H. Carter* and *Mr. John J. Balleray*.

MR. JUSTICE BEAN, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. A conversion is defined by this court, in *Ramsby* v. *Beezley*, 11 Or. 49 (8 Pac. 288), as "any distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it"; and in *Perkins* v. *Mc-Cullough*, 36 Or. 146 (59 Pac. 182), it is held that "all persons who aid, advise, or assist the commission of a tort are as fully liable as if they had personally committed the objectionable act." Before the defendants, or either of them, can be held liable for a conversion of the plaintiff's property, therefore, it must appear from the testimony that they have exercised some act of dominion or control over it inconsistent with his rights, or have aided or assisted some other person to do so.

2. Now, it does not appear that either McLean or the bank had or exercised any dominion or control over the flour, nor was the conversion by the mill company with or by their advice or approval. McLean's only part in the transaction was to receive and accept in good faith a part of the proceeds of the flour in payment of a debt due him from the company, without any knowledge or notice that

the flour belonged to the plaintiff, or that he had any interest in or claim thereto. The receipt by a creditor of money in payment of a debt, without knowledge or means of knowledge, that it did not belong to the debtor, does not make him liable therefor to the true owner: *Newhall* v. *Wyatt*, 139 N. Y. 452 (34 N. E. 1045, 36 Am. St. Rep. 712). When personal property has been converted by a wrong-doer, it may be followed by the owner into the hands of any one receiving it, whether taken with knowledge of his right, or not, so long as the identity of the property can be shown, whatever form it may take: *Velsian* v. *Lewis*, 15 Or. 539 (16 Pac. 631, 3 Am. St. Rep. 184); *Williams* v. *Merle*, 11 Wend. 81 (25 Am. Dec. 604); *Merchants' & P. Bank* v. *Meyer*, 56 Ark. 499 (20 S. W. 406); *Kimball* v. *Billings*, 55 Me. 147 (92 Am. Dec. 581); *Swim* v. *Wilson*, 90 Cal. 126 (27 Pac. 33, 13 L. R. A. 605, 25 Am. St. Rep. 110). But when the property has been converted into money, and the money has lost its specific identity by becoming a part of a large mass, the original owner of the property cannot assert his right against the one receiving the money in good faith: *Le Breton* v. *Pierce*, 2 Allen, 8.

It is settled by repeated decisions that money, even when obtained by fraud or felony, cannot be followed by the true owner into the hands of one who has received it *bona fide* and for a valuable consideration in the due course of business. "It is absolutely necessary for practical business transactions," say the Supreme Court of New York in *Stephens* v. *Board of Education*, 79 N. Y. 183, 187 (35 Am. Rep. 511), "that the payee of money in due course of business shall not be put upon inquiry, at his peril, as to the title of the payor. Money has no earmark. The purchaser of a chattel or a chose in action may, by inquiry, in most cases, ascertain the right of the person from whom he takes the title. But it is generally impracticable to trace the source from which the possessor of money has derived

it. It would introduce great confusion into commercial dealings if the creditor who receives money in payment of a debt is subject to the risk of accounting therefor to a third person who may be able to show that the debtor obtained it from him by felony or fraud. The law wisely, from considerations of public policy and convenience, and to give security and certainty to business transactions, adjudges that the possession of money vests the title in the holder, as to third persons dealing with him, and receiving it in due course of business and in good faith upon a valid consideration." And Lord MANSFIELD, in *Miller* v. *Race*, 4 Burr, 432, says that money "never shall be followed into the hands of a person who *bona fide* took it in the course of currency, and in the way of his business." We think it clear, therefore, that McLean cannot be held liable for a conversion of property belonging to plaintiff, by simply receiving in good faith, in payment of a debt due him, a part of the money for which it was sold, although he knew the source from which the money was derived. By so doing he was not guilty of a conversion of the property. He did not exercise any control or dominion over it inconsistent with the plaintiff's rights.

3. It is argued, however, that the bank is liable in any event, because the bill of lading was delivered to it by the mill company, transmitted by it to San Francisco, and there delivered to the consignee. A bill of lading represents and stands for the property for which it was given, and the right and title of such property may pass by an indorsement of the bill, or by a mere delivery thereof, when such was the intention with which the indorsement or delivery was made: 4 Am. & Eng. Ency. Law (2 ed.), 547. But neither the indorsement nor delivery of a bill of lading has any effect in passing the title or dominion or control over the property, except as the result of a con-

tract between the parties, and the real transaction may be shown by parol.

Now, the evidence in this case shows that the bill of lading was not transferred or delivered to the bank with any intention that either the title or control of the property should pass to it. The bank was simply used as a convenient means by which the mill company could transmit the bill of lading to its consignee, and receive the money for the flour before the delivery of the bill. It acted as a mere agent for the collection of the money due from the consignee, and not for the sale or disposition of the flour. It did not own the bill, had no connection whatever with the contract of sale by the mill company to the consignee, took no part therein, and was in no way identified therewith. If the draft accompanying the bill had not been paid on presentation, the bank would have had no authority, without further directions from the mill company, to sell or dispose of the flour, or to exercise any dominion or control over it. In *Dodge* v. *Meyer*, 61 Cal. 403, relied upon by the plaintiff, the defendant purchased from the consignor of grain shipped to Europe a draft drawn on the consignee, and received as security therefor an assignment or transfer of the bill of lading, knowing at the time that the goods did not belong to the consignor, but to the plaintiffs. The majority of the court held that under the circumstances the transaction operated and was intended as a pledge of the goods to the defendant as security for the draft, and, as a holder of the bill, he was guilty of conversion in refusing to deliver it to the plaintiffs on demand. There is a strong intimation in the opinion, however, that he would not have been liable if he had been a mere collecting agent for the consignor. The case, on its facts, differs materially from the one now under consideration. Here the bank did not purchase the draft, and had no interest therein, except as a mere collecting agent. It knew

nothing of the plaintiff's ownership of the property, but supposed that it belonged to the mill company. The bill of lading was not delivered to it with any intention of passing title, or as security for the payment of the draft. The position of the plaintiff is, in effect, that every bank which in due course of business and in good faith receives for collection a draft drawn by a consignor of goods upon his consignee, if accompanied by the bill of lading, becomes *ipso facto* a pledgee of the goods, and is guilty of a conversion if they do not in fact belong to the consignor, although it never received possession of them, nor exercised any dominion or control over them. We do not find any support in the authorities for such a doctrine, and are unwilling to announce it as a principle of commercial law. It has, indeed, been held that where a bank discounted a draft of the consignor, and was itself named as the consignee in the bill of lading, its indorsement and delivery of the bill to the drawee of the draft and party for whom the goods were intended, upon receiving the pay therefor, did not make it liable for a conversion, because there was not such an appropriation or assumption of such dominion or control over the property, to the exclusion of the real owner, as amounted to a conversion. It was shown, notwithstanding the form of transaction, that the bank was in fact acting as a mere financial agent for the consignor for the transmission of the bill of lading and the collection of the money: *Leuthold* v. *Fairchild*, 35 Minn. 99 (27 N. W. 503, 28 N. W. 218).

It follows that the judgment of the court below must be affirmed, and it is so ordered.          AFFIRMED.