Argued April 21, affirmed June 21, 1927.

# NORTHWEST AUTO COMPANY *v.* REO MOTOR CAR COMPANY.

(257 Pac. 10.)

**Appeal and Error—In Reviewing Propriety of Submitting Case to Jury, Supreme Court Need Only Determine Whether Any Competent Substantial Evidence Supported Verdict.**

1. Where case was tried to jury and error is assigned in that verdict should have been directed, it is only necessary for Supreme Court to determine whether there was any competent substantial evidence to support verdict rendered.

**Principal and Agent—In Automobile Distributor's Action Against Manufacturer for Terminating Contract, Whether Defendant Breached Contract Held for Jury.**

2. In action by automobile distributor against manufacturer for damages resulting from defendant's termination of contract when plaintiff insisted on buying under partial payment plan as agreed, whether defendant breached contract *held* for jury.

**Principal and Agent—For Contract to be Binding, Minds of Parties must Meet and Offer must be Accepted Either by Word or Act.**

3. For contract between automobile manufacturer and distributor to be binding, minds of parties must meet on identically the same proposition and manufacturer's offer must have been accepted by distributor either by word or act.

**Principal and Agent—Evidence Held not to Show Delivery of Cars was Made or Intended to be Made at Shipping Point, Under Contract Between Automobile Distributor and Manufacturer, so as to Require Payment in Full of Cars Shipped During October (Or. L., § 8183, Rule 3; § 8209).**

4. On issue whether automobiles shipped by manufacturer to distributor during month of October, and leaving shipping point during that month, constituted a delivery to distributor when placed on board cars at shipping point so as to require distributor to pay for October deliveries in full as required by contract, though

---

1.   See 2 R. C. L. 198.
3.   See 6 R. C. L. 592.

shipments arrived at destination during November, evidence that delivery of cars was made or intended to be made at shipping point *held* insufficient for jury, in view of Section 8183, Rule 3, Or. L.; Section 8209 being inapplicable.

**Sales—Statutory Rule Relating to Passing of Title in Sales Contract is Subordinate to Parties' Intention (Or. L., § 8183, Rule 3).**

5. Section 8183, Rule 3, Or. L., relating to passing of title where possession of bill of lading is retained by seller or his agent, is subordinate to intention of parties.

---

Appeal and Error, 4 C. J., p. 853, n. 59, p. 858, n. 3.
Contracts, 13 C. J., p. 263, n. 78, p. 264, n. 80, p. 272, n. 48, p. 275, n. 72.
Sales, 35 Cyc., p. 194, n. 60, p. 631, n. 12.

From Multnomah: J. M. BATCHELDER, Judge.

Department 1.

This is an action for damages alleged to have occurred when the Reo Motor Car Company of Lansing, Michigan, terminated a contract of distributors for sale of Reo automobiles and parts thereof with the Northwest Auto Company of Portland Oregon. Verdict and judgment for plaintiff in the sum of $10,000. Defendant appeals. The plaintiff alleges in substance that about July 16, 1923, the plaintiff and defendant entered into an agreement by the terms of which the plaintiff was to have the exclusive right to purchase from the defendant, and to sell and distribute in the State of Oregon, and in certain counties of the State of Washington, Reo Motor cars and Reo parts during the year commencing August 1, 1923, and ending July 31, 1924; that defendant agreed to sell to plaintiff and plaintiff agreed to purchase for distribution during the period about two hundred Reo motor cars, and also a quantity of Reo parts, all to be paid for according to the factory list price. The motor-cars were to be about 50 per cent passenger and 50 per cent commercial vehicles. Later certain

arrangements were agreed to between the parties relating to details.

During September, 1923, by mutual agreement, the parties, as evidenced by letters, fixed the number and description of vehicles to be sold and delivered to the plaintiff, during the months of October, November and December, 1923, and January, February and March, 1924, at 105 cars.

The price was to be the factory list price less a discount on touring cars of 25 per cent, on all other cars of 30 per cent, and on all automobile parts of 25 per cent, the factory list price of vehicles during that period being given in detail; that by the original contract, as modified by the letter on about the tenth day of October, 1923, plaintiff should pay for 75 per cent of all vehicles to be sold by the defendant to plaintiff in the months of November and December, 1923, and the months of January and February, 1924, as follows: 25 per cent of the price for each vehicle at the time of delivery to plaintiff, plus excise tax in each case, and 75 per cent of the cost to be covered by the plaintiff's promissory note and a sales contract, to be paid not later than April 1, 1924, or immediately after delivery by plaintiff to a retail customer.

In accordance with the contract plaintiff purchased from defendant certain of such vehicles and automobile parts and paid therefor upon delivery, and in accordance with the modification of said contract the defendant sold and shipped to the plaintiff for delivery at Portland, Oregon, seven carloads of Reo automobiles, which arrived in November, 1923. (The vehicles being described.) · That upon the arrival of the vehicles plaintiff paid the freight thereon with the expense of unloading and insurance, amounting

to $4,574.08, none of which has been paid by defendant.

The defendant forwarded the bills of lading for these vehicles to a bank in Portland, Oregon, with drafts for the factory list price thereof, less the discounts; that plaintiff promptly offered to pay for the vehicles in accordance with the terms of the contract as modified, namely, 25 per cent cash, and 75 per cent by note and sales contract; but the defendant refused to accept such payment from the plaintiff and refused to deliver the vehicles to plaintiff or to perform the contract on its part, or to be further bound thereby, and notified the plaintiff that beginning with the year 1924, it would no longer continue to sell or deliver any vehicle or automobile parts to the plaintiff, but would engage another representative for the purpose of handling its products at Portland, Oregon. That plaintiff has on hand at the present time certain vehicles purchased from defendant under the contract at the discounts which cost plaintiff $15,417.34. That plaintiff also has on hand automobile parts so purchased for which plaintiff paid defendant the sum of $15,000. On account of the breach of the contract plaintiff demands damages in the sum of $104,615.83.

The defendant by its answer denies the contract as alleged by plaintiff and alleges it to be in effect as follows:

At Lansing, Michigan, about August 20, 1921, defendant and plaintiff entered into a written agreement covering the sale, purchase and distribution of Reo automobiles, commercial cars and repair parts, which contract expired by its own limitation on July 21, 1922, but thereafter through mutual understanding the relations were substantially continued so far

as the contract related to actual business relations during the next ensuing year, with modifications alleged and shown by exhibits attached. That the representation and distribution afforded defendant during the period was not satisfactory to defendant, and July, 1923, at Lansing, Michigan, further negotiations were had between the parties which resulted in plaintiff not being permitted by defendant to continue as distributor of defendant in the territory described in the contract with the express condition attached thereto and agreed to by the parties, that if such representation and distribution by the plaintiff did not improve and was not administered to the personal satisfaction of the defendant's general sales manager by December 31, 1923, then and in that event the services of plaintiff should absolutely terminate on the thirty-first day of December, 1923, at the option of the defendant or its general sales manager, and all contractual relations should be canceled.

That in pursuance of said extension of the contract defendant made shipments f. o. b. factory of certain described automobiles which were shipped from Lansing, Michigan, to plaintiff at Portland, Oregon, pursuant to the contract and orders of defendant where the same arrived in November, 1923, with sight drafts covering the purchase price upon plaintiff for the sum of $31,174.83 attached to bill of lading, which upon payment would pass defendant's title in the automobiles to plaintiff. Said drafts were never paid nor said bills of lading ever taken up by plaintiff and the O. W. R. & N. Company unloaded the cars and plaintiff paid the freight, expense of unloading and insurance thereon amounting to $4,574.08; that defendant upon first demand of plaintiff tendered to

plaintiff said sum and now has deposited with the clerk a check for the amount; that defendant has in all things faithfully performed said contract.

Defendant further avers that the representation of the defendant was not as agreed between the parties; that plaintiff neglected and refused to take delivery of the various models of automobiles as stipulated by the letter of September 13, 1923. A reply was filed by plaintiff putting in issue the new matter of the answer, except as alleged in the complaint.

AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Robert R. Rankin.*

For respondent there was a brief over the names of *Mr. Walter G. Hayes* and *Messrs. Clark, Skulason & Clark,* with an oral argument by *Mr. Alfred E. Clark.*

BEAN, J.—1, 2. It appears from the record that the plaintiff and defendant were dealing as they had been for several years, at first pursuant to a written contract and afterward pursuant to changes made by oral agreement and letters and telegrams. The first material hitch in the dealings between the parties seems to have occurred in regard to November shipments of automobiles which the plaintiff contends the agreement was that they should pay for 75 per cent of the cars at the time of delivery according to the partial payment agreement, and the defendant claimed and sent a draft for the full amount. Defendant assigns error of the court in refusing to grant defendant's motion for a nonsuit, and motion for the court to direct the jury to return a verdict in

favor of defendant, and also defendant's proposed instruction to the jury to return a verdict in favor of the defendant, all of which involve one and the same question.

The case having been tried before and submitted to a jury, it is only necessary for us to determine whether or not there was any competent substantial evidence to support the verdict rendered. Mr. F. W. Vogler, president of the plaintiff corporation, testified definitely to the effect that the contract was made between the plaintiff and defendant at Lansing, Michigan, in July, 1923, in substance as alleged in plaintiff's complaint. There was a sharp conflict in the testimony as to what the terms of the oral contract of July, 1923, were. Some of the letters of the defendant, which are in evidence, would seem to strengthen the belief of the jury that the oral contract was for the automobile year from August 1, 1923, to July 31, 1924. The jury was warranted in finding, if they believed the testimony of Mr. Vogler, that it was agreed between the parties that 75 per cent of the shipment of automobiles by the defendant for the month of November, 1924, were to be paid for in the following manner: 25 per cent cash upon draft for that amount, and 75 per cent of the cost to be covered by plaintiff's promissory note and a sales contract, to be paid on or before April 1, 1924, or immediately after delivery by plaintiff to a retail customer. On this question the jury had for consideration the telegram and letter of defendant dated August 5, 1923, in which *inter alia* defendant wrote supplementing a letter of September 13th of that year as follows:

"And offers financial assistance to the extent of making it possible for the 'House of Vogler' to accept

every vehicle on your contract allotment during the months above referred to, according to the following conditions * * "

"Assuming that during November you will retail a minimum of 25% of that month's schedule, that percentage, namely, one quarter of our November deliveries, will go forward draft against bill of lading. The balance, or 75% of allotment, will go out with draft against shipment for 25% of your cost of vehicles and note attached for balance covered by a sales contract on each vehicle to be paid not later than April 1, 1924, or immediately after delivery to a retail customer."

The testimony tended to show that when the cars were shipped to plaintiff for delivery during November, the defendant sent a draft to the Northwest National Bank of Portland for the full cost of the delivery. That the plaintiff relied upon the agreement made and paid cash for one fourth of the November delivery and offered to pay the 25 per cent of the cost and give a note and sales contract for the balance as per the agreement as claimed by plaintiff. This offer the defendant refused to accept and insisted the plaintiff pay the full cost of the cars before the plaintiff could obtain delivery thereof.

The jury was warranted in finding from the testimony that the defendant thereby breached its contract. The assumption of defendant, indicated in the quotation, that the plaintiff during the month would retail a fourth of that month's schedule and that a draft for that portion would go forward with the bill of lading was merely anticipating that plaintiff would retail at least 25 per cent of the schedule and deliver the same to customers, therefore, plaintiff would be willing to take care of the draft for such portion at time of delivery to plaintiff. The letter does not

express any intention to require the plaintiff to pay more than 25 per cent of the cost of 75 per cent of the November schedule, except at or about the time of delivery to a retail customer. The letter also no doubt influenced the jury in believing that the arrangement for plaintiff to act as distributor for defendant's products was for a longer time than until December 31, 1923, as it further states:

"This arrangement to attach to deliveries during the following three months; December, January and February."

It is indicated that the business methods outlined in the written contract of former years were to be observed in the following years, except as expressly changed by agreement. The testimony tended to show that the contract of July, 1923, was accepted by plaintiff and acted upon by both parties. The defendant's testimony, upon which it relied on the trial, was contrary to all this, but with that we have no concern.

3. Defendant contends as the first reason why plaintiff cannot recover, that there was no acceptance of the contract under which plaintiff claims. It is quite true that the minds of the parties must meet on identically the same proposition. The offer of the defendant must be shown to have been accepted by the plaintiff either by word or act: 13 C. J., p. 272, § 67; *Lemler* v. *Bord,* 80 Or. 224 (156 Pac. 427, 1034); *Carnahan Mfg. Co.* v. *Beebe-Bowles Co.,* 80 Or. 124 (156 Pac. 584).

In the present case the testimony on the part of the plaintiff indicated that the plaintiff and defendant completed the oral contract, except as to details, in July, 1923, at Lansing, Michigan, and that the con-

tract was acted upon for fully four months. The contract was modified by subsequent agreement as evidenced by the correspondence of the parties.

The definite number of cars was by the compact to be fixed by monthly allotment, which plan was suggested to be changed by defendant's letter of September 13, 1923, and an allotment of cars for plaintiff was made for six months covering the months of October, 1923, to March, 1924, both inclusive. Plaintiff by letter of September 20, 1923, informed defendant that its office believed they would be able to take the allotment with one or two exceptions which might cover "coupe and model D" with every reason to believe plaintiff would ask for an increase in "C touring." Defendant answered plaintiff's letter on September 25, 1923, and expressed pleasure to know that plaintiff was willing to allow defendant to ship allotment as proposed by letter of September 13th. Relating to further details, supplemental to the September 13th letter, defendant wrote a letter on September 18, 1923, addressed to Mr. Vogler, in which it was stated:

"Dear Fred:

"Following up our letter of September 13th covering your allotments to be taken during the winter months, beg to state that if you find, after checking up, that you will need an additional number of certain models to take care of your requirements, advise us at once.

"We may be able to give you an additional number providing you can take them during the months of December, January and February."

The jury was warranted in finding that there was no failure of plaintiff to acquiesce in the suggested arrangement embodied in the defendant's letter of

September 13, 1923. The nonacceptance by plaintiff of the terms of the contract was not the basis for defendant's motion for nonsuit and verdict for defendant. As disclosed by the evidence there was some disagreement between plaintiff and defendant regarding plaintiff releasing a part of its sales territory. Plaintiff offered to release the Seattle-Washington territory if "they would take over any Reo salable parts we had on hand up there, also take over any stock of cars, unused stock of cars or speed wagons we might desire whenever the transfer was made."

Plaintiff complains because the Seattle territory was taken away from it, and only a small portion of the Reo parts were taken off the hands of plaintiff and its subsidiary company. On August 14, 1923, defendant proposed that plaintiff release Columbia and Garfield Counties in Washington. Plaintiff by letter of August 17, 1923, stated its dealer in Walla Walla, Washington, had been covering this territory with promise of future business; that it had made the Walla Walla dealer carry some Reo parts; "now it would not be the square thing to take this territory away at this time," and asked that the matter be held up. On the 22d of that month defendant wired plaintiff and confirmed the same on the next day as follows:

"Have decided to give Columbia and Garfield counties to Blackwell as have not heard anything from you since your wire sixteenth. Establishment new dealer connection means immediate business and bright prospects in future."

There is testimony that when defendant canceled its contract with plaintiff for Oregon and the remain-

der of the Washington territory later on in 1923 and gave the agency to a new dealer, it did not take over, and did not procure its new dealer to take over, the Reo parts which respondent had on its hands at that time in Portland. The Reo parts which respondent had on hand December 31, 1923, based on factory costs plus freight, was $16,690.26. Respondent was able to sell to the new dealer less than $1,000 worth.

It is not indicated that Reo parts are kept on hand to be supplied to users of that kind of a car, principally sold by such dealer, and that the parts at Walla Walla were not taken off plaintiff's hands. Mr. Clark, secretary and treasurer of plaintiff, testified anent this matter thus:

"Owing to the fact that we are no longer Reo agents, the value of Reo parts has practically gone to the value of junk.

"Q. And as junk, about what is its value? A. Their value is negligible, probably get six cents a pound, selling them by the bulk. It is possible that some of the later model parts might realize more money, but as far as the Northwest Auto Company is concerned, when, eventually nobody will come to buy any, they will stand on our hands as dead stock, which will eventually have to be sold as junk; the new dealer refusing to take them."

On a visit of Mr. R. C. Reuschaw, defendant's sales manager, to Portland in October, 1923, in a conference with Mr. Vogler of the plaintiff corporation, Mr. Reuschaw complained because the plaintiff had at their place of business in Seattle a sign which read "Reo Parts for Sale," and also said to Mr. Vogler, "You are buying gypt parts for the Reo car outside of the factory." Any violation of the rule in regard to purchasing parts outside of the factory was denied

by Mr. Vogler, but he claimed the right to maintain
the sign in Seattle unless the defendant would take
the Reo parts in Seattle, mentioned above, off plain-
tiff's hands.

Mr. Reuschaw informed the plaintiff that unless it
took its sign down from its Seattle place of business,
or if it bought another part outside the Reo factory,
defendant would cancel plaintiff's agreement with the
Reo company. The climax was reached on November
30, 1923, as shown by a letter signed by Mr. Reu-
schaw, the general sales manager of defendant, ad-
dressed to Mr. F. W. Vogler, president of the plain-
tiff, which reads in part as follows:

"This is to confirm our conversation when I was
in your office October 13 and 14 that we had decided
to make a change in our representation in Portland,
effective December 31."

It is apparent that the weightier part of the breach
of contract by defendant, in the first instance, was a
refusal of the defendant to permit the plaintiff to re-
ceive the November delivery of cars upon payment
for 75 per cent thereof in cash for 25 per cent of the
cost, and extension of time by a note and sales con-
tract for the other three fourths of the balance.
Upon this point the defendant contends that the cars
shipped from Lansing during October which arrived
at Portland during November were a part of the
October schedule for which the plaintiff was required
to pay the full amount upon a draft before delivery
of the cars.

It should be borne in mind that the main contract
was made orally between the parties at Lansing,
Michigan, in July, 1923. It was not contemplated
or expected, or even thought to be possible, that all of

the details relating to the business for the coming automobile year from August 1, 1923, to July 31, 1924, would then be arranged.

In conformity to the agreement a schedule of cars allotted to plaintiff was made by the Reo Company and forwarded to the plaintiff. It is contended on behalf of defendant that the shipments of cars made during October, and leaving Lansing during that month, constituted a delivery to plaintiff when placed on board the cars at Lansing, and that as plaintiff was required to pay for the October deliveries in full, and it should have paid in full for the cars arriving in Portland in November which had been started in October, that there was no warrant for a finding differently, and that plaintiff breached its contract when it refused to pay for the cars arriving in Portland in November, 1923. The schedule of cars for the six months, according to defendant's letter of September 13, 1923, was as follows:

                October  —20 cars.
                November—19  ”
                December—15  ”
                January —15  ”
                February—17  ”
                March  —19  ”

The deliveries for October were to be twenty cars. Plaintiff does not question the requirement for it to pay for that many cars delivered in October.

Mr. W. J. H. Clark, secretary-treasurer of the plaintiff company, testified in answer to interrogatories as follows:

"Q. And can you tell the jury how many of those orders arrived in October, or how many cars of each kind arrived in October? A. Ten of the speed

wagons arrived in October and twelve of the passenger cars.

"Q. Did you pay for all of them? A. Yes, sir.

"Q. Now, on your shipments that arrived here in November, did you pay for some of them, also? A. Yes, one of the October shipments arrived on the 10th of November—No, the 16th of November, I guess it is. We paid for that."

Mr. Triphagen, one of the sales managers of defendant, testified in regard to this point as follows in giving his version of the testimony of plaintiff: "It is my understanding that twenty-two cars were paid for in the month of October, which made it possible for the Northwest Auto Company to accept the storage plan." Mr. Triphagen also testified to the effect that the September allotment to plaintiff was twenty-four cars; that they took eighteen; that of the October allotment of twenty cars the plaintiff took eleven; that the November allotment was twenty and plaintiff took twenty-six.

It appears that plaintiff paid for all the cars that were delivered to it during the time mentioned. From this and the other testimony, the jury could reasonably conclude that the plaintiff took and paid for the October allotment according to the proposition contained in the letter of October 5, 1923, and that the plaintiff was entitled to the benefit of the so-called storage plan, or partial payment plan, proposed in the letter of defendant of October 5, 1923, and promptly accepted by defendant.

In defendant's letter of October 5, 1923, which proposed the partial payment plan, is found language which indicates that the defendant felt "quite sure that all the cars (the October shipment) will be delivered by you during the month of October, or soon thereafter." Defendant did not seem to expect that

plaintiff would make deliveries of the cars until they arrived in Portland, even if it should chance that it might sell one before it arrived. There appears no reason for the jury to believe any differently than defendant expected. Indeed, it does not appear that plaintiff could take delivery of any of the cars until it paid for them, or paid a part of the cost and gave title contract note with usual protection of insurance.

Defendant asserts that the plaintiff did not accept the partial payment plan mentioned in defendant's letter of October 5, 1923. As an answer to this contention we quote plaintiff's letter to defendant, which indicates the contrary as follows:

"October 10, 1923.

"Reo Motor Car Co.,
    "Lansing, Michigan.
              "Attention R. C. Reuschaw.
"My dear Reuschaw:

"Yours of October 5th duly received, this proposition is a good one and we hasten to accept same, as we feel it will be of considerable benefit to us.

"Our understanding of the offer is that all drafts for shipment in the months of November and December, 1923, and January and February, 1924, will be drawn for 25% of the cost of the vehicles as billed to us and the balance will be carried on non-interest bearing title notes in your favor payable not later than April 1, 1924, or immediately car is sold at retail, if sold prior to April 1st, 1924.

"Thanking you for showing us this courtesy.

                "Very truly yours,
                    "NORTHWEST AUTO CO.,
                              "President.

"FWV/LN."

Neither the court nor the jury would have been justified by the evidence in concluding that plaintiff,

when it offered to pay for cars arriving in Portland in November, in strict conformity to the so-called "storage" or "partial payment" plan, was not living up to its contract. Under the evidence the jury could fairly find that defendant, by refusing to comply with this agreed arrangement, violated its contract.

The claim of defendant that some of the propositions of defendant made to plaintiff were not accepted does not extract the true meaning of the correspondence of the parties, and entirely leaves out the consideration of the acts plainly indicating acceptance. "By their acts ye shall know them." See 9 Cyc., p. 257.

4, 5. Defendant contends that cars shipped during the month of October, such as order No. 56, to be shipped on or after October 25th, and expected to arrive some fifteen days after shipment, belonged to the October schedule and were delivered to the plaintiff at Lansing. This contention is based upon Section 8209, Or. L., which reads:

"Where in pursuance of a contract to sell or a sale, the seller is authorized or required to send the goods to the buyer, delivery of the goods to a carrier, whether named by the buyer or not, for the purpose of transmission to the buyer, is deemed to be a delivery of the goods to the buyer, except in the case provided in (1) Section 8182, Rule 5, * * which is, 'if the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or have reached the place agreed upon,' or (2) 'unless a contrary intent appears.' "

We fail to see that this rule applies. As we have noted above, we think that the contrary intent ap-

pears and should govern.  Rule (3) of Section 8183, Or. L., more nearly applies:

"Where goods are shipped, and by the bill of lading the goods are deliverable to the order of the buyer or of his agent, but the possession of the bill of lading is retained by the seller or his agent, the seller thereby reserves the right to the possession of the goods or against the buyer."

See *Walker* v. *First Nat. Bank,* 43 Or. 102 (72 Pac. 635); *Petersburg Fire Brick & Tile Co.* v. *American Clay Mach. Co.,* 89 Ohio St. 365 (106 N. E. 33, L. R. A. 1915B, 537); *Greenwood Groc. Co.* v. *Canadian County Mill & Elevator Co.,* 72 S. C. 450 (52 S. E. 191, 110 Am. St. Rep. 627, 2 L. R. A. (N. S.) 79); *Hopkins* v. *Cowen,* 90 Md. 152 (44 Atl. 1062, 47 L. R. A. 124).

The rule is subordinate to the intention of the parties.  In the dealings between the plaintiff and defendant, according to their custom the cars received at Portland during the month of November, the bill of lading with draft accompanying it was forwarded by the defendant to the Northwest National Bank which acted for the Reo Company.  The possession of the bill of lading was to be retained by the Reo Company, the seller and its agent, until the payment should be made, or as plaintiff claimed, payment of part and a note and sales contract.  The title was not to pass to the plaintiff until the cars were paid for in full.  This leaves no room for the contention that the delivery of these cars was made, or intended to be made, at Lansing, Michigan.  In other words, the October allotment of cars did not necessarily embrace all of the October shipments, although in some of the correspondence between the parties the words

"allotment" and "shipment" are used interchangeably.

The defendant's letter of October 5th, supplementing its letter of September 13, 1923, indicated that it was calculated to make it possible "to accept your October shipments according to allotment on the usual basis," the word "shipments" appearing to be qualified by the words "according to allotment." It is true one of the witnesses stated, in effect, that "the responsibility of the manufacturer for the cars ceased upon delivery of the cars to the common carrier." This is purely a legal conclusion of the witness which we are unable to follow.

The whole plan of operation between the parties, as the testimony disclosed for the consideration of the jury, was that the payment for cars should be made and title passed to the distributor, as near as could be approximated, and not later than the time of a sale or delivery to a retail customer.

We cannot here extend the lengthy record detailing the method of the parties conducting business between themselves for several years. We do not intend to intimate that there was no testimony directly refuting that of plaintiff on very material points. It was mainly upon such testimony that the defendant relied upon the trial.

There was substantial competent testimony in the case sufficient to carry the case to the jury. We cannot say as a matter of law that the verdict was incorrect. We find no error of the trial court in refusing the motion for a nonsuit and denying the kindred motions. There is no claim made by defendant of any error of the court in submitting the case to the jury, except those revolving around the requested

instructions for a verdict in favor of defendant. We appreciate that the briefs thoroughly present the case for our consideration.

Finding no error in the record, the judgment of the Circuit Court is affirmed.   AFFIRMED.

McBRIDE, COSHOW and RAND, JJ., concur.