Argued November 18; reversed December 15, 1936; rehearing
denied January 5, 1937

# REID *v.* WENTWORTH & IRWIN, Inc., et al.

(63 P. (2d) 210)

Department 2.

*B. G. Skulason* and *S. P. Ness,* both of Portland, for appellant.

*Will H. Masters,* of Portland, for respondent.

BAILEY, J. The plaintiff, T. A. Reid, instituted this action against the defendants, Wentworth & Irwin, Inc., hereinafter to be referred to as the defendant corporation, and F. W. Turnbow, to recover damages for the alleged conversion by the defendants of a truck and trailer, also a set of tire chains and a set of tools, alleged to be the property of plaintiff. The case was tried to the court and a jury, resulting in a judgment of involuntary nonsuit as to the defendant F. W. Turnbow and a directed verdict in favor of the defendant corporation. From the judgment entered on the directed verdict the plaintiff has appealed.

In August, 1934, the plaintiff acquired in a trade with the defendant F. W. Turnbow a GMC truck and a Wentwin trailer which are the principal subjects of this action. In payment for this equipment Reid transferred to Turnbow on a valuation of $2,000 a truck and

trailer owned by him, assumed a balance of indebtedness amounting to $1,411.76 owing by Turnbow to Yellow Manufacturing Acceptance Corporation, hereinafter to be referred to as YMAC, on a conditional sale contract for said GMC truck and Wentwin trailer, payable at the rate of $177 per month and guaranteed to YMAC by the defendant corporation, and further agreed to pay the defendant corporation the sum of $2,734.24 owing by Turnbow to it on said truck and trailer. This last amount of indebtedness was evidenced by a promissory note dated August 7, 1934, with interest on the unpaid balance at the rate of eight per cent per annum. This note was secured by a chattel mortgage on the truck and trailer.

At the time Reid acquired the truck and trailer from Turnbow the latter had an agreement or understanding with Fletcher Oil Company of Boise, Idaho, to transport by said truck and trailer the gasoline used by that company, which "right to transport gasoline" was limited to the GMC truck and Wentwin trailer and passed with the transfer of that equipment. The defendant corporation knew of this arrangement.

During the month of February, 1935, the GMC truck and Wentwin trailer while being operated by the plaintiff were severely damaged in a collision and were brought to the defendant corporation's shop in Portland for repair. The repair work, however, was not commenced for some time, due to pending legislation limiting the size and weight of trucks 'and trailers on the highways of this state.

Almost from the time that plaintiff acquired this truck and trailer the defendant corporation encountered difficulty in collecting the monthly payments due it on its chattel mortgage. The only payment which it ever did succeed in recovering was the payment due

September 7, 1934, which was paid during the month of October of that year. The defendant corporation also was charged with making collections on the YMAC financing contract.

The defendant corporation wrote numerous letters to plaintiff, reminding him that he was delinquent in payments both to the defendant corporation and to YMAC. On March 12, 1935, the defendant corporation sent a registered letter to the plaintiff at his home address, Redmond, Oregon, advising him that the truck and trailer were in storage in its shop and stating that he was delinquent in payment of his chattel mortgage and that if he did not make some satisfactory payment to apply on his delinquency within 10 days of the date of the letter, foreclosure proceedings would be instituted. This letter was delivered to the plaintiff at Redmond on March 18. Before receiving it, however, the plaintiff on March 15 went to the defendant corporation's office and there discussed the matter of his indebtedness with Charles G. Irwin, general manager of the defendant corporation. According to plaintiff's contention, Irwin agreed with him that if he, the plaintiff, would pay $500 on or before May 1, no action would be taken against him on the mortgage.

The chattel mortgage given by Reid to the defendant corporation provided in part as follows: "In case default be made in payment of any installment of principal or interest of said note as and when the same shall become due, or in case the mortgagor shall make default in the performance of any of the covenants or conditions to be by him kept and performed, . . . the mortgagee may declare the whole sum of both principal and interest due and payable, and at once proceed to collect the same, and foreclose this mortgage," take possession of the mortgaged equipment and sell or dis-

pose of it "at public or private sale, with one week's notice, in a newspaper of general circulation, published in the county where the mortgage is being foreclosed, or without notice to the mortgagor," and from the proceeds of such sale pay the amount due the mortgagee. The instrument further provided that "at such public sale, mortgagee may become a purchaser."

On March 27, 1935, the defendant corporation published in the Daily Record Abstract at Portland, Oregon, a notice to the effect that on April 4, 1935, at 10 o'clock a. m., the defendant corporation would offer for sale at public auction all the right, title and interest of said Reid in and to said truck and trailer, pursuant to the terms of the chattel mortgage, to satisfy the sum of $2,551.96 due on said chattel mortgage, with interest at the rate of 8 per cent per annum from September 7, 1934, together with costs of repossession, costs of sale and attorney's fees.

Reid was in the defendant corporation's shop on March 27 and there discussed with D. N. Sermon, an employee of the corporation, the repairs to be made on the truck and trailer. He then had no knowledge of the pending foreclosure of his chattel mortgage. Sermon, however, was aware of the proceedings instituted, but did not mention that fact to Reid.

M. J. Hosford of Fletcher Oil Company on March 28, 1935, wrote a letter to C. A. Reid, plaintiff's brother, who had been making deliveries of gasoline to that company, that said company that day had been advised by the defendant corporation that the truck and trailer purchased by T. A. Reid from Turnbow had been repossessed and returned to Turnbow. Pursuant to the advice contained in that letter the plaintiff and his brother, C. A. Reid, on April 1 called at the defendant corporation's place of business and there entered into

a discussion of the matter with Mr. Irwin. They were informed by him that at that time the chattel mortgage had been foreclosed and that it was too late for plaintiff to make the payments due on his mortgage.

The deposition of Mr. Hosford of Fletcher Oil Company was taken, and he therein stated that when he wrote to C. A. Reid the letter of March 28, 1935, hereinbefore mentioned, he had before him a communication from Wentworth & Irwin, Inc., to the effect that the equipment which had been used by Reid in transporting gasoline for Fletcher Oil Company had been repossessed by Wentworth & Irwin, Inc., and returned to Turnbow. He further stated that shortly before his deposition was taken the defendant Turnbow had procured from him this letter from the defendant corporation to Fletcher Oil Company and promised to return it within a few days, but it had never been returned.

On April 1 when talking to Sermon, Reid asked him if he, Reid, could pay $1,000 on account, to which Sermon replied in the negative. Reid then told Sermon, he stated, "That is more than Mr. Turnbow will pay you," and Sermon answered, "Mr. Turnbow is paying more than that." On the same day A. C. Ford, hearing that Reid was about to lose his truck and trailer, called on the defendant corporation, discussed the purchase of this equipment with one of its employees identified as Mr. Neal and was advised by that employee that the truck had already been turned over to Turnbow.

Mr. Irwin admitted on examination that he had, as early as March 30, entered into an agreement with Turnbow to sell the truck and trailer to him, but that the sale was contingent upon the defendant corporation's acquiring the equipment upon forecloseure proceedings. He stated that he believed the original contract for such sale to Turnbow was in his office, and he

was thereupon asked by counsel for plaintiff to produce the same, but he did not comply with that request, nor was his failure to produce explained, so far as disclosed by the record.

We have set forth the evidence which is most favorable to the plaintiff, for the reason that question here arises as to whether the circuit court committed error in directing a verdict for the defendant corporation. We are not concerned with the judgment of involuntary nonsuit as to F. W. Turnbow, for the reason that the entering of that judgment is not assigned as error.

The appellant urges that there was sufficient evidence to warrant submission of the case to the jury, on the following grounds: (1) That the defendant corporation had by its acts waived strict compliance with the contract as to payment of monthly installments due on the note and that before the mortgage could be foreclosed because of delinquency in payment the defendant corporation was required to give notice to plaintiff of its intention to foreclose, allowing him a reasonable time in which to pay the delinquent installments, and that failure to give such notice of intention to foreclose the chattel mortgage rendered the foreclosure and sale unlawful and void; and (2) that the defendant corporation by exercising dominion and control over the truck and trailer inconsistent with plaintiff's right and title thereto had converted the same to its own use and benefit.

Reference has already been made to the fact that only one month's installment on the note given by Reid to the defendant corporation was paid. This payment was made in October, 1934, a month or so after the same became due. No other payments were ever tendered by plaintiff to the defendant corporation.

 Stipulations such as are contained in acceleration clauses providing that upon default of the payer the payee at his option may declare the entire amount of the note due and payable are not regarded as in the nature of a penalty or forfeiture and are therefore not viewed with disfavor by the courts. They are considered as agreements between the parties for bringing the notes to an earlier maturity than by the terms of the instrument otherwise provided. Notes secured by mortgages differ materially from contracts of sale providing for forfeiture in the event that the stipulations thereof are not strictly performed. When note and mortgage contain acceleration clauses, as in the case at bar, it is not necessary in the event of default for the holder of such note to make demand upon the maker thereof for payment before declaring the entire amount of the note due and payable: *Harrison v. Beals,* 111 Or. 563 (222 P. 728).

The appellant has cited a number of cases in which a court of equity has denied to the mortgagee the right to foreclose his mortgage for the unpaid balance of the note or obligation, for the reason that notice had not, prior to the institution of the suit, been given to the mortgagor that the mortgagee intended to institute foreclosure proceedings, or because of acts of the mortgagee amounting to waiver or constituting an estoppel on his part. The facts in those instances, however, differ widely from the circumstances shown in the case at bar, and it would not be helpful here to review those decisions. In all such cases relied upon by the appellant the mortgagor was seeking equitable relief.

█ There was no valid agreement between the plaintiff and the defendant corporation for an extension of time for plaintiff to pay the amount owing by him. There was undoubtedly a request by plaintiff for additional

time, but an agreement for such an extension must be supported by a consideration, which here is entirely lacking.

The record fails to disclose that the plaintiff ever tendered the amount of the delinquent installments to the defendant corporation before the foreclosure proceedings were instituted, and it also fails to show that after such proceedings were commenced the plaintiff tendered to the defendant corporation the amount of the delinquent installments or the entire unpaid balance of the note.

■ The evidence, viewed in the light most favorable to the plaintiff, tends to show that the defendant corporation prior to April 4, 1936, which is the date on which it claims to have purchased the truck and trailer on foreclosure proceedings, exercised dominion and control over the truck and trailer inconsistent with its right as mortgagee in possession upon default by the mortgagor and inconsistent with plaintiff's ownership of the equipment. Such acts on the part of the defendant corporation constituted conversion of that property: *Barber v. Motor Investment Co.,* 136 Or. 361, 364 (298 P. 216); *R-F Finance Corporation v. Jones,*—Tex. Civ. App. — (50 S. W. (2d) 475); *McLeod Nash Motors v. Commercial Credit Trust,* 187 Minn. 452 (246 N. W. 17, 87 A. L. R. 296); *Peterson v. Hailey National Bank,* 51 Idaho 427 (6 P. (2d) 145); *Metheny v. Davis,* 107 Cal. App. 137 (290 P. 91).

The letter from the defendant corporation to Fletcher Oil Company is significant, in view of the fact that the defendant corporation knew of Turnbow's former ownership of the truck and trailer, that they had been acquired from him by Reid, and that the right to transport gasoline for Fletcher Oil Company "remained with the truck and trailer". Upon turning over

the equipment to Turnbow the defendant corporation might be expected to notify Fletcher Oil Company of its action.

■ The failure of Irwin to produce the written contract containing the terms of sale of the truck and trailer to Turnbow is not to be overlooked in determining whether the sale of that equipment to Turnbow on March 30 was contingent upon the defendant corporation's purchasing it at the foreclosure sale on April 4. The terms of this written agreement would have furnished "higher evidence" of the contract than the oral testimony of Irwin, and the presumption is that such evidence, if produced, would have been adverse to the defendant corporation: § 9-807, subdivision 6, Oregon Code 1930.

■ When we consider the purport of the above letter to Fletcher Oil Company and the failure of Irwin to produce the written contract of sale to Turnbow, together with Irwin's statement to Reid on April 1 that the mortgage had already been foreclosed, the remark of Sermon to Reid on April 1 that Turnbow was paying more than Reid was offering, the disclosure by Neal to Ford on the same date that the equipment had been turned over to Turnbow, and the other facts and circumstances appearing in the record, we are impelled to the conclusion that there was sufficient evidence to submit to the jury the question of whether there was a conversion of the truck and trailer by the defendant corporation. In directing a verdict for the defendant corporation the trial court committed error.

■ The set of tools and the set of tire chains were left by the plaintiff in the defendant corporation's shop when he took the truck and trailer there for repair. It does not appear from the record that any acts in con-

nection with the tools and chains inconsistent with plaintiff's ownership thereof were committed by the defendant corporation; moreover, no sufficient demand was made by plaintiff on the defendant corporation for such tools and chains prior to the commencement of this action.

For the reasons hereinabove stated the judgment of the circuit court relative to the conversion of the truck and trailer is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

BEAN, KELLY and RAND, JJ., concur.