Argued October 27, affirmed as modified December 12, 1975

ATLAS HOTEL SUPPLY COMPANY,
*Respondent-Cross-Appellant, v.* BANEY ET AL,
*Appellants-Cross-Respondents.*
543 P2d 289

*Keith L. Erickson,* Redmond, argued the cause for appellants and cross-respondents. On the briefs were Walter I. Edmonds, Jr., of Bryant, Edmonds & Erickson, Redmond, and Gerald A. Martin, of Gray, Fancher, Holmes & Hurley, Bend.

*Dennis C. Karnopp,* Bend, argued the cause for respondent. With him on the brief were Panner, Johnson, Marceau & Karnopp, Bend.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, TONGUE, HOWELL and BRYSON, Justices.

## TONGUE, J.

This is an appeal from a judgment of the trial court, sitting without a jury, awarding plaintiff $75,-000 damages for conversion of restaurant equipment. The judgment is against defendants Curtis Baney, Attilio Marastoni and William Jacobson.

These defendants assign as error the holding that no demand was required in order to constitute a conversion under the facts of this case; that defendant Curtis Baney was a joint tortfeasor, and contend that in its award of $75,000 the court applied the wrong measure of damages. Plaintiff cross-appeals from the failure of the trial court to grant judgment against defendants Myrtle Baney and Julia Marastoni.

*The facts.*

■ This being an appeal in an action at law from findings and judgment in favor of the plaintiff, we must view the evidence most favorable to the plaintiff, despite contradictory evidence offered by defendants. *Hassan v. Guyer,* 271 Or 349, 532 P2d 227 (1975).

Plaintiff is engaged in the restaurant supply business, including design, engineering work and installation of all equipment and supplies, both large and small, as required for the operation of a restaurant. In February 1970 plaintiff completed such an operation for the Eddie Mays restaurant in Bend. It then entered into an "equipment lease" agreement with Eddie Mays Company for a total rent of $168,348, payable in monthly "installments." Plaintiff assigned its interest in that agreement to Leasing Service Corporation.

Eddie Mays Company was also obligated on a real estate mortgage on which it defaulted in late 1971. It also defaulted on payments due under the equipment lease agreement. The mortgage on the real property was then foreclosed "subject to the prior and superior interests of defendant Leasing Service Corporation as owner of said personal property * * *." Meanwhile, that corporation exercised its contract right to have plaintiff assume performance of the equipment lease agreement and in January

1972 plaintiff commenced making the contract monthly payments of $2,805.80 to that corporation and continued to do so up to the time of trial in December 1974.

Defendants Baney, as husband and wife, owned a motel adjacent to the restaurant and were interested in the operation of the restaurant "to enhance the motel operation." On March 20, 1972, prior to the foreclosure sale, they entered into a contract with the mortgagee to purchase the restaurant real property. That contract provided that "prior to closing" they should "arrive at a settlement with Leasing Service Corporation and/or [plaintiff] with respect to the personal property on the premises leased therefrom * * *."

Meanwhile, defendant Curtis Baney talked to plaintiff about the possible purchase of the restaurant equipment owned by it. His purpose was to "put the whole package together for a whole restaurant," and that included his purchase of plaintiff's restaurant equipment, as well as the real property.

At about the same time defendant Curtis Baney undertook negotiations with defendant Attilio Marastoni as a possible operator of the restaurant. On February 3, 1972, defendants Marastoni and Jacobson (both husbands and wives) filed with the Oregon Liquor Control Commission an application for a retail liquor license for the premises and on March 1, 1972, defendants Baney entered into a lease agreement with defendants Marastoni and Jacobson for the real property "together with all of the equipment located therein." Defendants testified that this reference to the equipment was a mistake and was not intended to include plaintiff's equipment.[1]

[1] The trial court apparently found, however, that the lease was intended to and did cover "all of the equipment located therein," in accordance with the terms of the lease, and there was substantial evidence to support such a finding.

Defendant Attilio Marastoni then went upon the premises and undertook painting and equipment repairs in anticipation of opening the restaurant upon approval of the application for a liquor license. During that same period, defendant Curtis Baney negotiated with plaintiff for purchase of its restaurant equipment. Those negotiations were unsuccessful.

On May 3, 1972, the liquor license was granted and on May 6, 1972, defendants Marastoni and Jacobson opened the restaurant for operation with the consent of defendant Curtis Baney. Plaintiff, however, had not consented to the use of its equipment and on May 9, 1972, notified defendants that it considered the use of the equipment to constitute conversion.

Since then defendants Marastoni and Jacobson have remained in possession and control of the restaurant equipment and have used it in their restaurant operation until the trial of this case, without payment to plaintiff, but in the hope of negotiating a purchase of the equipment. Negotiations in an attempt to agree upon a purchase price continued until September 1972. During that period no demand was made by plaintiff for return of the equipment, but on September 7, 1972, defendant made a demand upon plaintiff to remove the equipment or accept $60,000 for it. Plaintiff then filed this action.

1. *The trial court did not err in holding that no demand for return of the equipment was necessary to entitle plaintiff to bring an action for conversion.*

■ Defendants contend that defendants Baney were lawfully in possession of the restaurant real property by their purchase of that property; that they then became involuntary bailees of plaintiff's equipment; that they could have required plaintiff to remove its equipment; that plaintiff chose not to do so and that under these facts there could be no conversion of the

equipment until plaintiff made a demand for its return, followed by a refusal to respond to that demand. In support of this position defendants cite *Jeffries v. Pankow,* 112 Or 439, 223 P 745, 229 P 903 (1924); *Lee Tung v. Burkhart,* 59 Or 194, 116 P 1066 (1911); *Bliss v. Southern Pacific Co. et al,* 212 Or 634, 321 P2d 324 (1958); *Davis v. American National Bank of Denver,* 149 Colo 34, 367 P2d 325 (1961); and Restatement of Torts 2d § 237 (1965).

In support of this position defendants also refer to testimony by plaintiff's president to the effect that no demand was made for return of the equipment because of negotiations for its purchase, which was still pending when the restaurant was reopened; that he assumed that the equipment would be used in the operation of the restaurant by the buyer of the equipment and hoped to sell the equipment "in place," but did not acquiesce in the use of the equipment and within two or three days after the reopening of the restaurant "wrote a letter" which notified defendants that plaintiff considered their use of the equipment to constitute a conversion of it.

Assuming, however, that defendants Baney became involuntary bailees of plaintiff's equipment when they purchased the real property on which it was located, that fact did not give them the right to use the equipment, much less the right to deliver it to a third party. The conversion of plaintiff's equipment took place when defendants Baney entered into the lease of the real property to defendants Marastoni and Jacobson "together with all of the equipment located thereon," and delivered to them both the restaurant real property and the restaurant equipment owned by plaintiff and when those defendants accepted the delivery of that property.

■ It is well established in Oregon that when a conversion has already taken place by the wrongful

delivery of property to a third party no demand is necessary as a condition of the right to bring an action for conversion of the property. *Eade et al v. First Nat. Bank of Condon,* 117 Or 47, 51, 242 P 833 (1926). See also *Gowin v. Heider,* 237 Or 266, 305, 386 P2d 1, 391 P2d 630 (1963); *Miller v. Lillard,* 228 Or 202, 205, 364 P2d 766 (1961); *Montgomery v. U.S. Nat'l Bank et al,* 220 Or 553, 568, 349 P2d 464 (1960). *Jeffries v. Pankow, supra,* and other Oregon cases cited by defendants involved different facts and do not hold to the contrary.

It follows that the trial court did not err in this case in holding that no demand for return of the restaurant equipment was necessary to entitle plaintiff to bring an action of conversion under the facts of this case.

2. *The trial court did not err in holding that defendant Curtis Baney was a joint tortfeasor.*

■ Defendants concede the rule to be that "[A]ll persons who aid, advise or assist in the commission of a tort are as fully liable as if they personally committed the objectionable act" (citing *Perkins v. McCullough,* 36 Or 146, 59 P 182 (1899)), but contend that "[B]efore the defendant Baney can be held liable for a conversion of plaintiff's property, it must appear that he had exercised some act of dominion or control over it inconsistent with his rights or have aided or assisted some other person to do so" (citing *Walker v. First National Bank,* 43 Or 102, 72 P 635 (1903)), and that "mere acquiescence" does not constitute "aiding" (citing *State v. Stark,* 7 Or App 145, 490 P2d 511 (1971)). Defendants further contend that "no proof exists of any personal assistance" by defendant Baney and that evidence of his negotiations for purchase of the equipment was "unrelated."

In this case, however, there was ample other

evidence to support a finding that defendant Baney at least "aided" and "assisted" in the commission of the tort of conversion. His agreement for purchase of the restaurant and real property required as a condition of closing that transaction that he settle with plaintiff over the restaurant equipment. Such a settlement was never accomplished. Defendant Baney nevertheless leased both the restaurant real property and "all of the equipment located therein" to defendants Marastoni and Jacobson and he did so with full knowledge of the fact that they had applied for a liquor license for the restaurant and of the fact that they intended to use plaintiff's equipment in its operation.

As stated in Prosser on Torts 87, § 15 (4th ed 1971):

"Perhaps the most common way in which conversion is committed is by an unauthorized transfer or disposal of possession of the goods to one who is not entitled to them."

See also *Eade et al v. First Nat. Bank of Condon,* *supra* at 52; *Reid v. Wentworth & Irwin,* 155 Or 265, 273, 63 P2d 210 (1937), and *Geren v. Hollenbeck,* 66 Or 104, 106, 132 P 1164 (1913).

Thus, despite evidence to the contrary offered by defendants, there was ample evidence in this case to support a finding that defendant Baney at least "aided" and "assisted" in the conversion of plaintiff's restaurant equipment so as to be liable to plaintiff as a joint tortfeasor.

3. *The award of damages was supported by substantial evidence.*

Defendants recognize that the market value of the goods at the time and place of the conversion is the proper measure of damages in an action for conversion (citing *Hall v. Work,* 223 Or 347, 357, 354

P2d 837, 366 P2d 533 (1960)), but contend that this measure of damages, as applied to this case, is the market value of plaintiff's restaurant equipment "removed from the restaurant premises," rather than its value "in place," citing *C. D. Shamburger Lumber Co. v. Bredthauer,* 62 SW2d 603 (Tex Civ App 1933), and *Clayton v. Phillipp,* 159 SW 117 (Tex Civ App 1913). Defendants also say that it was agreed by all parties in this case that the value of this equipment would be substantially less if valued "in a removed state rather than in place."

Plaintiff contends, to the contrary, that the ultimate test to be applied as a measure of damages in an action for conversion is that of "just compensation" and quotes from our decision in *Barker v. Motor Investment Co.,* 136 Or 361, 366, 298 P 216 (1931), as follows:

> "* * * After all, it is the object of the law to make just compensation to the owner of personal property who has sustained damage by being deprived of its use and benefit. Ordinarily the market value of the property meets the requirement of just compensation. When, however, this general rule runs counter to the cardinal rule of just compensation, it is not to be followed. * * *"[2]

Defendants respond by quoting from the decision by this court in *Mock v. Terry,* 251 Or 511, 513, 446 P2d 514 (1968), in which we quoted from *Hansen v. Oregon-Wash. R. & N. Co.,* 97 Or 190, 201, 188 P 963, 191 P 655 (1920), as follows:

> "* * * While the fundamental rule of law is to award compensation, yet rules for ascertaining

---

[2] Plaintiff also contends that consideration should be given to the fact that during the period of time during which the equipment was being used by defendants in the operation of the restaurant, plaintiff was required to make 31 monthly payments to Leasing Service Corporation in the sum of $2,805.80 per month up to the time of trial, for a total of $86,979.80.

the amount of compensation to be awarded are formed with reference to the just rights of both parties, and the standard fixed for estimating damages ought to be determined not only by what might be right for an injured person to receive in order to afford just compensation, but also by what is just to compel the other party to pay * * * ."

It also appears that in *Blake-McFall Co. v. Wilson,* 98 Or 626, 648, 193 P 902 (1921), an action for the conversion of an elevator in a building, this court held that under the facts of that case defendant was liable for the value of the elevator "as it then was," rather than its value "as torn down for removal."

It may be contended that although an "in place" measure of damages may be proper in an action for conversion of an elevator in a building, it does not follow that the same measure of damages should be applied to the restaurant equipment in this case and that the loss to the plaintiff at the time of the conversion in this case must have been what it could have recouped had it repossessed the equipment. On the other hand, it may be contended that because the conceded general rule is that the value of goods converted is to be determined as of the time and place of the conversion, it is the value of the goods as used and "in place" at that time and place that is controlling, rather than their value after removal from that place. Also, if "what is just to compel the other party to pay" is to be considered, as suggested by defendants themselves, it may be contended that defendants, as wrongdoers, should not be permitted to profit from their own wrongful act, as would be the result if they are required to pay less than the cost of purchasing comparable equipment and installing it in place for operation as a going business, so as to be comparable to the equipment converted by them.

It appears that there is a split of authority, as well as considerable uncertainty, upon the question whether the proper measure of damages to be applied in an action for conversion of personal property of this kind is the market value of such property "in place" or "in a removed state" and a proper resolution of that question is not without some difficulty.[9]

We need not decide that question in this case, however, because it appears upon examination of the record that the award by the trial court of damages in the sum of $75,000 is supported by substantial evidence on either an "in place" or "in a removed state" basis.

■ As previously stated, because this is an appeal in an action at law from a judgment in favor of plaintiff, we must view the evidence most favorable to it, despite contradictory evidence offered by appellants. Moreover, an award of damages in an action at law by a trial court, sitting without a jury, must be affirmed by this court if supported by any substantial evidence. *Gordon Creek Tree Farms v. Layne et al*, 230 Or 204, 217, 358 P2d 1062, 368 P2d 737 (1962).

■ One of plaintiff's expert witnesses testified that the value of the restaurant equipment "in place" was

---

[9] Other cases supporting an "in a removed state" measure of damages, although under different facts, include: *I. Tannenbaum Son & Co. v. C. Ludwig Baumann & Co.*, 261 NY 85, 184 NE 503 (1933); and *Luciano v. Camp Ideal*, 272 App Div 947, 72 NYS2d 80 (1947).

Other cases supporting an "in place" measure of damages, also under different facts, include: *E. Kronman, Inc. v. Bunn Bros., Inc.*, 265 Mass 549, 163 NE 711 (1929); *Neiswanger v. Squier*, 73 Mo 192 (1880); *Red Diamond Clothing Co. v. Steidemann*, 169 Mo App 306, 152 SW 609 (1912); *Independence Flying Service, Inc. v. Ailshire*, 409 SW2d 628 (Mo 1966); and *Smyth v. Stoddard*, 203 Ill 424, 67 NE 980 (1903).

See also 4 Sutherland, Damages, §§ 1110, 1114 (4th ed 1916); Prosser, The Nature of Conversion, 42 Cornell L Q 168, 170 (1957); and Annot., 86 ALR 111 (1933).

the sum of $92,050 and that its value "in a removed state" was between $65,000 and $70,000. However, another expert witness called by plaintiff testified that if the equipment "were removed from the premises and sat on the lawn for a buyer to come by and buy * * * on the open market after its been used for something like two years" there would be a "decrease in value" of "about thirty-five percent" from what this equipment *originally sold for."* To the same effect, this same witness testified "these items on schedule A would be worth approximately *sixty-five percent of their original value"* if valued "on the street."

That witness had previously testified that he had participated in the selection of the equipment listed on "Schedule A" and that the "figure on the end" of that schedule (the sum of $121,891.29) represented the "total figure that was paid to Atlas for this equipment." Sixty-five percent of that amount is the sum of $79,230—a figure in excess of the $75,000 awarded by the trial court.

Another expert witness called by plaintiff testified that the original value of the equipment in 1970 was the sum of $115,050. Sixty-five percent of that amount is the sum of $74,782.50—a figure which the trial court may have "rounded off" at $75,000.

It follows, in our opinion, that there was substantial evidence to support the award of damages in the sum of $75,000 regardless whether the proper measure of damages for application in this case was the value of such equipment "in place" or "in a removed state."[4]

---

[4] We have not overlooked the fact that in a "memorandum opinion" the trial court said that the "on the curb" (i.e., "removed state") measure of damages was "unfair." On the other hand, the trial court also did not appear to adopt the "in place" measure of damages, but instead approved the "fundamental principle" of

### 4. *Liability of wives for conversion.*

Plaintiff cross-appeals from the finding by the trial court that "there was insufficient evidence to establish liability, direct or indirect, as to the defendants' Julia Maristoni and Myrtle Baney." It is to be noted that this assignment of error does not include the failure of the trial court to find that defendant Julia Anne Jacobson was also liable under the judgment entered by the trial court.

■ As to defendant Myrtle Baney, it appears that although she, together with her husband, defendant Curtis Baney, were the purchasers of the restaurant real property, and although she was named as a party in the lease to defendants Marastoni and Jacobson, she did not sign that lease. Plaintiff concedes that the relationship of husband and wife is not alone sufficient to make her husband her agent, as a matter of law, in signing that lease, but contends that in other

---

"fair and just compensation" as a measure of damages and stated that "considering all the testimony relative to value and condition, the court is of the opinion that a fair and reasonable award of damages is the sum of $75,000." No findings of fact were made and entered, however, when the trial court filed its judgment in the sum of $75,000.

Plaintiff says that because this judgment is supported by the evidence it must be affirmed by us for the reason that "a judgment of the trial court will be affirmed if it is correct, no matter what reason is stated as a basis for the judgment," citing *Pakos v. Warner,* 250 Or 203, 205-06, 441 P2d 593 (1968), and *Reid v. Reid,* 219 Or 500, 512, 348 P2d 29 (1959). Defendants make no contention to the contrary in their reply brief, other than to repeat the contention that the correct measure of damages in this case is the market value in a removed state.

Moreover, we have held that such an informal opinion has no "legal efficacy" (*Thomsen v. Thomsen,* 118 Or 614, 615, 228 P 832, 245 P 502, 247 P 808 (1926)), and cannot be used to attack or impeach on appeal. (Cf. *Sause Bros. Ocean Tow. v. Gunderson,* 265 Or 568, 576, 510 P2d 541 (1973), and *Barone v. Barone,* 207 Or 26, 30, 294 P2d 609 (1956).)

Under all of these circumstances, we hold that the previous informal "memorandum opinion" does not require that we set aside that judgment.

previous transactions he had acted as her agent and that there was also evidence that she later ratified the lease by receiving its benefits. We have examined the evidence and hold that it was not sufficient to require the trial court to hold, as a matter of law, that Mr. Baney was Mrs. Baney's agent in executing that lease or that by receiving benefits under the lease she later ratified the lease with the knowledge and intent required in order to constitute such a ratification. See *Alldrin v. Lucas*, 260 Or 373, 490 P2d 141 (1971). We therefore affirm the finding of the trial court as to defendant Myrtle Baney.

■ As to defendant Julia Marastoni, it appears that she was a signer of not only the application for a liquor license, but also of the lease agreement, which included all of the restaurant equipment on the premises and constituted a conversion of plaintiff's equipment, as previously held. She was also a partner of her husband and defendant Jacobson, as indicated by her signing of an assignment of partnership interest. Although defendants in their reply brief state reasons why the finding of the trial court as to defendant Myrtle Baney should be affirmed they state no reasons and refer to no evidence to support the finding by the trial court as to defendant Julia Marastoni. We hold that as her husband's partner and as a party to the lease she was a participant, as a matter of law, in the conversion of plaintiff's property—that act being in the course of the partnership business. ORS 68.250, 68.270(1). See also *McGrath v. Nolan*, 83 F2d 746, 750 (9th Cir 1936). It follows that the trial court erred in its finding to the contrary.

The judgment of the trial court is modified by adding defendant Julia Marastoni as one of the defendants against whom plaintiff shall have judgment. In all other respects that judgment is affirmed.

Affirmed as modified.