Argued and submitted October 30, 2000, affirmed June 6, 2001

Russell F. WILSON,
*Appellant,*

*v.*

Michael COOKE,
dba Northwest Cedar,
*Respondent.*

97C-13015; A107574

26 P3d 822

Randall P. Sutton argued the cause for appellant. With him on the briefs was Saalfeld, Griggs, Gorsuch, Alexander & Emerick, P.C.

L. E. Ashcroft argued the cause for respondent. With him on the brief was Ashcroft, Wiles, LLP.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

EDMONDS, P. J.

Armstrong, J., concurring.

## EDMONDS, P. J.

Plaintiff lessor appeals after the trial court, sitting without a jury, found against him on his claim for damages arising out of the alleged negligence of his lessee, defendant. Plaintiff alleged that defendant's negligence caused a fire that destroyed plaintiff's building. The trial court ruled that plaintiff failed to prove that defendant's negligence caused the fire. We affirm.

Plaintiff owned a commercial building in Lyons, Oregon, that he leased to defendant. Defendant was the building's only tenant. In the building, defendant operated a woodworking business that produced cedar hot tub enclosures. His employees used stationary electrical power tools to cut the cedar and water-based wood stains to treat the wood. On an average day, there were eight to ten employees working in the building. When the business closed each day, defendant's employees were instructed to turn off all power to the building at the power source and to padlock or secure all of the doors. On most days, the building was also swept and vacuumed several times to minimize the amount of sawdust left inside.

The employees reported that, at the close of operations on August 31, 1995, they followed the same procedure regarding the turning off of the power and the securing of the doors. No one observed a fire burning inside the building when defendant's last employees left that day, but there was some sawdust on the floors and in some areas of the building. By about 6:30 that evening, the building was in flames and was eventually completely destroyed by fire. The fire was not observed or reported until defendant's last employee had been gone for about three hours.

Several days after the fire, a private investigator and a Deputy State Fire Marshal investigated the cause of the fire, once the building was safe to enter. They found no evidence of arson—there were no signs of forced entry, there was no evidence of a motive to burn the building, and no indications of the use of any chemical accelerant or ignition agent. Both investigators noted that there had been no electrical power to the building at the time the fire started and

that there were no signs of electrical malfunction. The private investigator observed that there was a motor covered in sawdust in the shop area but that it was not in the area where the fire had probably started. The Deputy State Fire Marshal concluded that the cause of the fire was "unknown." The private fire investigator concluded that defendant's negligence caused the fire.

Plaintiff brought this action, alleging that defendant had breached the lease with plaintiff and that his negligence had caused the fire. The breach of lease claim was based on a dispute about defendant's obligation to insure the building and its contents against fire. The parties ultimately reached a stipulation on that claim, which limited defendant's liability if defendant were found to have been negligent. As to the claim of negligence, plaintiff alleged that defendant (1) used products that were combustible (the lumber) in a careless and reckless manner, (2) failed to use care commensurate with the danger created by his work activities, and (3) failed to supervise his employees adequately. Defendant denied the allegations of negligence. The parties waived a jury trial.

At trial, plaintiff presented evidence of the above facts regarding defendant's use of the building. The private investigator testified that a fire requires three elements: a spark or source of ignition, a fuel, and a force that brings the spark and the fuel together. He provided pictures taken after the fire that demonstrated that there had been sawdust in the building that could have served as the fuel for the fire. Plaintiff argued that defendant's failure to remove the sawdust was negligence in and of itself and was sufficient to hold defendant liable for negligence. He asserted that, even if a spark had been introduced into the building by a non-negligent cause, the fire would not have occurred had all the sawdust been removed.

As to a possible ignition source, plaintiff's expert testified that he had ruled out an electrical malfunction and arson as causes of the fire. In light of that testimony, plaintiff

argued that the court should use the doctrine of *res ipsa loquitur* to provide an inference of causation.[1] Plaintiff's expert also testified that he believed that a cigarette left smouldering in the workplace by one of defendant's employees could have been the ignition source. However, no evidence of a cigarette as the cause of ignition was found. Defendant offered the evidence from the Deputy State Fire Marshal that the cause of the fire was "unknown."

Neither party asked the trial court to make special findings of fact or conclusions of law under ORCP 62. The trial court took the case under advisement and ultimately found for defendant. It issued a letter opinion setting forth its ruling. Plaintiff makes three assignments of error on appeal. First, he contends that "[t]he court erred in failing to apply the doctrine of *res ipsa loquitur* to infer that the fire was caused by [defendant's] negligence." Second, he asserts that "[t]he court erred in failing to find [defendant] negligent as a matter of law." Finally, he argues that "[t]he trial court erred in failing to consider the accumulation of sawdust as a cause of the fire." He also contends that we should review the trial court's factual determinations for "substantial evidence" and its legal conclusions for errors of law.

In plaintiff's first assignment of error, he argues that the trial court misunderstood the doctrine of *res ipsa loquitur*, which led to an erroneous conclusion that plaintiff had failed to carry his burden of proof. Plaintiff asserts that the trial court's recitation of the elements of *res ipsa loquitur* in its letter opinion demonstrates its error and contends that "in a case tried without a jury, if the court is influenced in making its factual findings by an error of law, reversal is appropriate." As authority for that proposition, he cites *Babler Bros. v. Pac. Intermountain*, 244 Or 459, 466-67, 415 P2d 735 (1966).

---

[1] "*Res ipsa loquitur* is a rule of evidence whereby circumstantial evidence may be used to prove ultimate facts. More specifically, it allows the jury to infer both negligence and causation * * * if 'the accident which occurred * * * is of a kind which more probably than not would not have occurred in the absence of negligence on the part of [the defendant.]' " *Fieux v. Cardiovascular & Thoracic Clinic, P.C.*, 159 Or App 637, 640, 978 P2d 429, *rev den* 329 Or 318 (1999), *quoting Watzig v. Tobin*, 292 Or 645, 649, 642 P2d 651 (1982) (citation omitted).

In *Babler Bros.*, the plaintiff bought gasoline from the defendant and, during the delivery of the gasoline, the plaintiff's agent incorrectly measured the level of gasoline already in the plaintiff's storage tank. As the gasoline was being discharged from the defendant's truck into the plaintiff's tank, the gasoline overflowed and ultimately exploded, injuring one of the plaintiff's employees and damaging the plaintiff's property. The plaintiff sued the defendant for damages, claiming negligence. The defendant defended on the ground that the explosion was caused by the plaintiff's negligent measurement. The case was tried to the court. The court found the defendant negligent and legally culpable. The court also found the plaintiff negligent, but ruled that it was foreclosed by the rule of a Supreme Court case from characterizing the plaintiff's negligence as a "proximate cause" of the harm. The court therefore ruled for the plaintiff.

On appeal, the Supreme Court overruled its case on which the trial court had relied. The plaintiff nonetheless argued that the trial court's result ought to be affirmed because there was evidence on which a jury could have exonerated the plaintiff of contributory negligence, and that even if the trial court had incorrectly perceived the law, it could have reached the same result. In rejecting that argument, the court said,

"The trial record shows that the judge was led, by *Oregon Mutual Fire Ins. Co. v. Mayer,* [211 Or 556, 316 P2d 805 (1957),] into applying an incorrect rule of law, *i.e.,* holding as a matter of law that the negligence of the plaintiff was not a 'proximate cause' of the harm. Does such an error require reversal? It is argued in support of the judgment that the finding of fact, standing alone, is one which the court might properly have made. A jury could have exonerated plaintiff of contributory negligence. Therefore it is argued, the trial court's decision accomplishing the same permissible result ought to be affirmed. The analogy between judge and jury as triers of fact breaks down, however, when it is recalled that a jury verdict is good only if the jury was properly instructed. When the record discloses that the jury applied the wrong law to the facts, the verdict cannot stand. *Where an error of law is shown to have influenced the court trying a case without a jury, reversal is*

*equally necessary." Babler Bros.*, 244 Or at 467 (emphasis added).

Plaintiff argues that the trial court's misapplication of the law of *res ipsa loquitur* in this case has the same effect as the court's misapplication of the law in *Babler Bros.* and thus compels reversal. The predicate to plaintiff's argument is the assertion that the trial court incorrectly understood the doctrine of *res ipsa loquitur*. For purposes of the analysis of that argument, we assume without deciding that we can review the trial court's decision for errors of law under *Babler Bros.*[2]

Plaintiff points to the paragraph in the trial court's letter opinion in which the trial court said:

"Plaintiff must produce evidence sufficient for the court to find that:

"1) The cause of the damage is one that ordinarily in the normal course of events would not have happened unless the Defendant was at fault; and

"2) That the instrumental[ity] of the damage was in the exclusive control of the Defendant; or that the evidence connects the incident to the defendant's conduct rather than other causes."[3]

The trial court's opinion continued:

"I agree with Defendant's argument that this fire is not akin to a beer barrel falling from a second story of a brewery. (It is likewise unlike a clamp left inside a patient after heart surgery.) It is true that ordinarily a beer barrel would not fall from a window absent negligence, but a fire in a wood shop (even where the power is turned off) does not necessarily result in a conclusion that it is more likely than not that it was started by Defendant's negligent means.

---

[2] Even though plaintiff did not make a motion for judgment as a matter of law to the trial court, it could be argued that he would have had no way of discerning that the trial court misunderstood the doctrine of *res ipsa loquitur* until he received the court's letter opinion.

[3] The court's summary of the law of *res ipsa loquitur* appears to be taken verbatim from defendant's trial memorandum.

"\* \* \* \* \*

"While it might be tempting to conclude the cause of a fire simply from the fact that the fire occurred in a building which was locked with the power off, one must resist the temptation unless the conclusion is logical and based upon reasonable inquiry and that it was more likely to have resulted from Defendant's negligence. Here, such is not proven. Plaintiff's case fails on *res ipsa loquitur* as well.

"**Conclusion**[:] Plaintiff's case fails to meet the burden of proof."

As a result of its conclusion, the trial court entered judgment in favor of defendant.

■ At oral argument, plaintiff contended that the first two sentences of the court's opinion misstate the law in several ways. First, plaintiff argues that the trial court's use of the phrase "the *cause of the damage* is one that ordinarily in the normal course of events would not have happened" is an erroneous statement of law because plaintiffs must show only that the "event" ordinarily would not occur in the normal course of events, and that it does not have to prove the "cause" of the damage under *res ipsa loquitur*, which allows a court to infer causation. We disagree that the statement is erroneous. When the statements in the court's opinion are read in context, it is clear that the trial court's focus throughout its opinion was on the fire itself and that the trial court understood that plaintiff did not have to prove the precise cause of the fire. Second, plaintiff argues that the trial court conflated the concepts of negligence and fault in the first sentence. According to plaintiff, the trial court should have said, "but for negligence," instead of using the phrase, "unless defendant was at fault." We do not understand how the trial court's choice of words in that context could have influenced it to misapply the law. In fact, the Supreme Court has stated the test almost the same way. *See McKee Electric Co. v. Carson Oil Co.*, 301 Or 339, 348, 723 P2d 288 (1986) ("A plaintiff need only plead ultimate facts that, if true, show that an injury occurred in circumstances that more probably than not would not have occurred in the absence of negligence *on the part of the defendant*.") (Emphasis added.).

Third, plaintiff argues that the trial court incorrectly required him to prove that defendant was in "exclusive" control of the instrumentality that caused the fire. He points to the trial court's second sentence. In *Pattle v. Wildish Construction Co.*, 270 Or 792, 797, 529 P2d 924 (1974), the court explained that the requirement of control by the defendant under the doctrine of *res ipsa loquitur* does not mean that the defendant must have had exclusive physical possession of the injury-producing instrumentality. Rather, the requirement is that it must appear from the evidence that the negligence of which the thing speaks is probably that of defendant and not of another. Plaintiff's characterization of the trial court's opinion fails to acknowledge the rest of the trial court's second sentence, which provides an alternative method of demonstrating the requisite control of the instrumentality. That phrase says, "or that the evidence connects the incident to the defendant's conduct rather than other causes." The trial court's sentence adequately restates the test set out in *Pattle*.

Finally, plaintiff argues that the trial court erred in not including in the second sentence the requirement that the evidence "more probably than not" connects the incident to defendant's conduct. However, it is clear from the remainder of the trial court's opinion that it was applying a "more probable than not" standard. Elsewhere in its letter opinion, the trial court, quoting *Barrett v. Emanuel Hospital*, 64 Or App 635, 638-39, 669 P2d 835, *rev den* 296 Or 237 (1983), said:

> "A plaintiff must establish that * * * there is an injury, that the injury 'is of a kind which ordinarily does not occur in the absence of someone's negligence,' and that the negligence that caused the event was *more probably than not* attributable to a particular defendant." (Emphasis added.)

The trial court also understood, as shown in another portion of its letter opinion, that,

> "[*res ipsa loquitur*] allows the fact finder to infer both negligence and causation, if the accident 'is of a kind which *more probably than not* would not have occurred in the

absence of negligence on the part of the defendant." (Emphasis added; citation omitted.)

When the trial court's statements are read in the context of its opinion as a whole, we discern no evidence that the trial court misunderstood the doctrine of *res ipsa loquitur*. Consequently, there is no "error of law" that affected the trial court's factfinding process in arriving at the decision that plaintiff had not carried his burden of proof. Accordingly, we reject plaintiff's first assignment of error.

■ Plaintiff's second assignment of error is that the trial court erred in not finding defendant negligent as a matter of law. The short answer to plaintiff's assignment is that the trial court was never asked to make such a ruling. No motion was made under ORCP 60 or ORCP 62, so there is no ruling by the trial court for us to review in that regard.

■ Plaintiff argues under his third assignment of error that the trial court erroneously required plaintiff to prove the precise ignition source that caused the fire and that it failed to consider the sawdust as evidence of defendant's negligence. If defendant's assignment of error is an assertion that there is no evidence to support the trial court's conclusion, it is incorrect. There is evidence in the record from which the trial court could have concluded that the origin of the fire was unknown, and the trial court was not required to draw the inference of causation urged by plaintiff. If defendant's assignment of error is meant to assign legal error, it fails for the same reason that his second assignment of error fails.

Affirmed.

**ARMSTRONG, J.,** concurring.

I agree with the majority's resolution of this case. I write separately, however, to address a tension that exists in Oregon law over how to raise and preserve issues in legal cases tried to a court. I do so to help litigants avoid having to contend with preservation problems on appeal in such cases and to encourage the Supreme Court and, perhaps, the Council on Court Procedures, to address the law in this area.

Plaintiff's first assignment of error is based on a contention that the trial court misunderstood the doctrine of *res ipsa loquitur* and, as a consequence, that it reached the wrong conclusion about defendant's liability for the fire that destroyed plaintiff's building. The alleged misunderstanding was embodied in an opinion letter in which the court explained the reasoning process that had led it to deny plaintiff's negligence claim against defendant. According to plaintiff, *Babler Bros. v. Pac. Intermountain,* 244 Or 459, 466-67, 416 P2d 735 (1966), provides authority for us to correct the trial court's misunderstanding about *res ipsa loquitur* and to direct the court on remand to act in accordance with the corrected understanding. In this case, the appropriate action on remand would be to enter a judgment in favor of plaintiff on his negligence claim. *Babler Bros.* appears to authorize us to address plaintiff's first assignment of error on its merits, but I am not sure that *Babler Bros.* is correct in its treatment of legal statements that a court makes orally or in opinion letters or similar documents that are not a part of the court's ruling on the issue to which the statements are addressed.

*Babler Bros.* was a negligence action that the parties tried to a court. After trial, the court sent the parties an opinion letter in which it explained that it had rejected a finding of contributory negligence against the plaintiff, based on a case that it believed compelled it to reach that conclusion as a matter of law. The court later entered findings of fact and conclusions of law prepared by the plaintiff that included a finding in favor of the plaintiff on contributory negligence but no discussion of the legal underpinnings of that finding. It also entered a judgment in favor of the plaintiff from which the defendant appealed.

On appeal, the defendant contended that the case on which the trial court had relied was incorrect and should be overruled. The Supreme Court agreed with the defendant. The issue, however, was whether the trial court's error in relying on the earlier case required reversal:

"It is argued in support of the judgment that the finding of fact, standing alone, is one which the court might properly have made. A jury could have exonerated [the] plaintiff of contributory negligence. Therefore, it is argued, the trial

court's decision accomplishing the same permissible result ought to be affirmed. The analogy between judge and jury as triers of fact breaks down, however, when it is recalled that a jury verdict is good only if the jury was properly instructed. When the record discloses that the jury applied the wrong law to the problem, the verdict cannot stand.

"Where an error of law is shown to have influenced the court trying a case without a jury, reversal is equally necessary. See *Watson v. Dodson*, 238 Or 621, 395 P2d 866 (1964). In that case a trial court had expressed the belief that there was no discretionary choice open. When it appeared that judicial discretion could have been exercised, even though either choice would have been affirmed on appeal, the failure of the trial court to exercise a choice was deemed reversible error.

"In the case at bar, if a judge had instructed a jury that the plaintiff's negligence could not, as a matter of law, be a proximate cause of the harm, the case would be in the same posture as it is now. In such a situation, a new trial could not be avoided."

*Babler Bros.*, 244 Or at 467. Consequently, the Supreme Court concluded that the legal error embodied in the trial court's opinion letter required the court to reverse the judgment and remand the case for a new trial. *Id.*

Other cases raise considerable doubt about whether statements made by a trial court in an opinion letter can be considered on appeal in the manner in which they were in *Babler Bros.* For example, in *Atlas Hotel Supply v. Baney*, 273 Or 731, 543 P2d 289 (1975), the Supreme Court held that it could ignore a statement in a memorandum opinion in which the trial court explained how it had calculated the damages in the case. The memorandum opinion stated that the court had found the plaintiff's damages for conversion of its restaurant equipment to be $75,000, based on a measure of damages that rejected the competing measures of damages proposed by the plaintiff and the defendants.

On appeal, the Supreme Court appears to have assumed that one of the two competing measures of damages

offered by the parties had to be the correct one. *See id*. at 742-43 and n 4. However, it concluded that it did not have to resolve which was the correct one. It reasoned that a factfinder could, in theory, apply either of the competing measures and, based on the evidence in the record, find the plaintiff's damages to be $75,000. Because the correct measure of damages could lead a factfinder to make the finding that the trial court, in fact, made, the court *could* affirm the judgment that was based on that finding.

*Atlas Hotel Supply* cannot be reconciled with *Babler Bros*. Under *Babler Bros*., the memorandum opinion in *Atlas Hotel Supply*, which disclosed that the trial court had used an incorrect measure of damages to make a finding on the plaintiff's damages, would require the Supreme Court to reverse the trial court's judgment and remand the case for a new trial on damages. *See Babler Bros*., 244 Or at 466-67. Only by ignoring the statement in the memorandum opinion and treating the case as one in which the trial court had *not* disclosed the legal principle on which it had made its damage finding could the court do what it did in *Atlas Hotel Supply*. *See Atlas Hotel Supply*, 273 Or at 742-43 and n 4.

The court relied in *Atlas Hotel Supply* on a number of cases that support the principle that oral or written statements made by a trial court that are *not* part of the ruling by which the court acts cannot be considered on appeal in evaluating whether the court erred in ruling as it did. *See id*. at 743 n 4 (citing and discussing cases). I am inclined to believe that the principle applied in *Atlas Hotel Supply* is the correct principle and, as a consequence, that *Babler Bros*. was wrongly decided.

The critical distinction at issue in these cases is between statements that are made as part of a ruling and those that are not. If the court made a mistake in *Babler Bros*., that mistake can be traced to its failure to recognize the distinction between the two types of statements. That can be demonstrated in two ways. First, in *Babler Bros*., the court relied on the *Watson* case as support for the principle that a statement by a trial court that discloses that it acted as it did on the basis of a legal misunderstanding may require the

appellate court to reverse the trial court even though the action taken by the trial court would otherwise have been affirmed had the statement not been made. *See Babler Bros.*, 244 Or at 467. Significantly, however, the statement at issue in *Watson* was made as part of an oral ruling at trial, so the statement could fairly be treated as part of the very ruling or act that was at issue on appeal. In contrast, the statements at issue in *Babler Bros.* and *Atlas Hotel Supply* were statements made in letter or memorandum opinions that preceded the findings of fact and conclusions of law or judgments that were attacked on appeal. In other words, the statements that disclosed that the trial courts misunderstood the relevant law were not made in the judicial rulings or acts that were being challenged on appeal.

The court obviously did not recognize a distinction in *Babler Bros.* between the two types of statements, because it treated the statement in *Babler Bros.* the same way that it treated the statement in *Watson*. In *Atlas Hotel Supply*, in contrast, the court relied on the distinction to ignore the statement that was equivalent to the one at issue in *Babler Bros.*

The second way to demonstrate that the court failed to recognize a distinction between statements that are part of rulings and those that are not is to analyze its treatment of the analogy between jury findings based on incorrect legal instructions and the finding at issue in *Babler Bros.* The court said, correctly, that a jury verdict based on an improper jury instruction cannot stand. *Babler Bros.*, 244 Or at 467. In other words, an appellate court will not consider whether there is evidence to support a finding made by a jury if the finding is founded on a jury instruction that incorrectly stated the law. Significantly, however, the manner in which *that* issue will be presented on appeal is by attacking the erroneous jury instruction on appeal. The ruling at issue on appeal will be the ruling on the jury instruction, *not* the court's acceptance of the jury verdict or its entry of a judgment in accordance with the verdict. The jury's verdict will not stand because the court's erroneous *ruling* on the jury instruction will be corrected on appeal.

In contrast, a letter or memorandum opinion does not constitute a ruling at all, so a statement made on a legal issue in such a document is not subject to attack on appeal in the way that a properly preserved objection to a ruling on a jury instruction is subject to attack. What is subject to attack is the later ruling in which the court actually implements the analysis presented in the letter or memorandum opinion. Unless the legal issue discussed in the letter or memorandum opinion is explicitly addressed or necessarily reflected in that ruling, the court's view of the legal issue is not part of the ruling, and the ruling will be evaluated on appeal on the basis of what it does rather than on the basis of what the court said as a prelude to issuing it.

The distinction between the two types of statements may appear to be formal and artificial, but I believe that it reflects an important principle about the manner in which issues are presented and decided at trial. Precisely because letter and memorandum opinions by trial courts are not understood to constitute rulings on issues, courts do not write them as if they were. They understand that their actual rulings will be embodied in later documents, so they do not approach the task as one in which the precise phrasing of a legal issue or point matters. Further, they often are written after a trial in which a number of legal and factual issues may have been raised. The parties may have prepared trial memoranda that addressed issues that the parties expected the case to present, but a broad outline of issues at the outset of a trial is not equivalent to the focus that occurs when a court is asked to make a specific ruling on a legal issue.

If a court's decision on a legal issue matters in a case tried to a court, the issue should be presented in a way that produces a ruling on that issue, just as it would in a case tried to a jury. One way to accomplish that would be to use ORCP 62 to require a court to enter findings and conclusions in a case tried to the court. There may be other ways that litigants or the Council on Court Procedures could consider developing to ensure that rulings can be obtained on legal issues that are presented in cases tried to courts. However the issue is approached, it is important for litigants to recognize that statements made by trial courts on legal issues in letter or

memorandum opinions may have no bearing on how appellate courts will review the actual rulings of the trial courts on appeal.[1] If the statements matter, the litigants had better get them into the courts' rulings.

---

[1] Our recent decision in *State v. Andrews*, 174 Or App 354, 27 P3d 137 (2001), suggests that there may be some flexibility on how issues can be raised and preserved at trial. *Andrews* involved a trial to a court in which the court convicted the defendant for carrying a loaded firearm in violation of a city ordinance. A central issue at trial concerned the elements that the state had to prove to convict the defendant of the crime. In announcing its decision to convict the defendant, the court stated that it agreed with the state's position on the elements of the crime, thereby rejecting the defendant's contrary position. We held on appeal that the court's statement constituted a ruling on that issue equivalent to a ruling on a disputed jury instruction in a case tried to a jury. In other words, we viewed the statement as a discrete ruling that was separate from the finding, later embodied in the court's judgment, that convicted the defendant of the crime. Because it was a discrete ruling, it could be assigned as error on appeal. Here, in contrast, nothing suggests that one of the parties sought from the court a ruling on the elements of *res ipsa loquitur* or that the court considered its discussion of the doctrine in its letter opinion to constitute a ruling on a disputed legal issue. *See also State v. Hull*, 286 Or 511, 516-17, 595 P2d 1240 (1979).

Rulings on legal issues in cases tried to courts should be subject to review on appeal. My point in writing this concurrence is to encourage the Supreme Court and the Council on Court Procedures to develop clear procedures by which parties can get reviewable trial court rulings on such issues. It is important that trial courts and litigants not be left with any uncertainty about how to raise and preserve legal issues in cases tried to courts.